UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**KEVIN BOYD CARLOCK**                                                                CIVIL ACTION

**VERSUS**

**NANCY A BERRYHILL,**                                                                 NO. 19-00136-BAJ-SDJ
*Acting Commissioner, Social Security
Administration*

### RULING AND ORDER

Before the Court is Claimant's appeal of the Commissioner's decision denying Social Security disability benefits. (Docs. 1, 8). The Commissioner has filed an opposition brief, (Doc. 10), and Claimant has filed a reply. (Doc. 11).

Because the Appeals Council (AC)—and, by extension, the Administrative Law Judge (ALJ)—disregarded the opinion of Claimant's treating physician that Claimant suffers from multiple "marked limitations" of his mental capacity and is incapable of performing full-time employment, and further failed to consider Claimant's ongoing treatment when assessing Claimant's ability to work, the Court vacates the Commissioner's unfavorable decision and remands for additional consideration consistent with this opinion.

**I.     FACTUAL AND ADMINISTRATIVE BACKGROUND**

Prior to 2008, Claimant worked as a specialized auto mechanic, internationally certified to service luxury cars including Porsche, Audi, BMW, and Land Rover. Beginning in June 2008, a combination of seizures, memory loss, depression, and

1

anxiety made it impossible for Claimant to maintain employment in his field. Thereafter, Claimant held various odd jobs until he stopped working entirely in 2011.

The medical evidence in the record dates to February 2015 and establishes that Claimant suffers from epilepsy, encephalopathy, depression, anxiety, personality disorder, posttraumatic stress disorder (PTSD), and lumbar degenerative disc disease. Claimant's conditions were identified by his treatment providers Joseph A. Acosta, M.D., a neurologist; Maxine E. Campbell-Flint, Ph.D., a psychologist; and Joe M. Gannon, M.D., an ophthalmologist. The medical evidence further establishes that since the onset of Claimant's alleged disability, he has reported to the emergency room or been hospitalized at least six times for seizures, seizure-related events—including a car accident resulting in traumatic brain injury (TBI) in 2015—depression, and a suicide attempt.

Throughout the alleged disability period, Claimant was examined and treated by Dr. Acosta, Dr. Campbell-Flint, and Dr. Gannon. Dr. Acosta has prescribed a regimen of Oxcarbazepine, Keppra, and Lamotrogine to treat Claimant's seizures (Doc. 7-8 at 281). Dr. Campbell-Flint has prescribed a regimen of Lamictal, Zyprexa, Restoril, Quetiapine, and related medications to treat Claimant's depression, anxiety, PTSD, and personality disorder. (*id.* at 119).

On June 6, 2016, Claimant applied for disability insurance benefits, alleging disability resulting from "seizures, back condition, knee condition, depression, ADHD, PTSD, schizophrenia, and tremors." On June 23, 2016, Claimant applied for supplemental security income (SSI) on the same basis. In each application, Claimant

alleged disability beginning June 1, 2008. Claimant, through counsel, later amended the alleged onset date to September 27, 2014.

The Social Security Administration (SSA) denied Claimant's claims on October 4, 2016. Claimant requested a hearing before the ALJ, which occurred on November 29, 2017 in Baton Rouge, Louisiana. Claimant was represented by counsel. The ALJ received testimony from Claimant, Claimant's wife, and an impartial vocational expert.

On April 10, 2018, the ALJ issued a written decision denying benefits. In relevant part, the ALJ determined that despite suffering from various "severe" impairments, Claimant is not disabled within the meaning of the Social Security Act. (Doc. 7-3 at 111). Specifically, the ALJ determined that Claimant failed to prove any physical impairments, and his mental impairments did not result "in at least one extreme or two marked limitations" in the following areas: "understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintain pace; or adapting or managing themselves." (*Id*. at 112).[1]

When determining that Claimant failed to prove a disability, the ALJ relied exclusively on the opinions of Sandra Durdin, Ph.D., and Adeboye Francis, M.D., state agency consultants that each performed a single consultative examination of Claimant in September 2016. (Doc. 7-3 at 111-112). Based on his September 7, 2016

---

[1] The ALJ further determined that Claimant maintains the residual functional capacity to perform three "medium work" occupations: janitor, dishwasher, or hand packager. (Id. at 118). In reaching this latter determination, the ALJ assigned "great weight" to the opinion of Hollis T. Rogers, M.D., a state agency consultant who reviewed Claimant's medical records and determined that Claimant "could perform less than the full range of medium exertional work with additional environmental limitations." (*Id*. at 116).

3

physical and mental exam, Dr. Francis determined that Claimant's cognitive skills and concentration are impaired, and that Claimant cannot drive or travel due to his seizures, but that Claimant is otherwise capable of performing "moderate exertional activities." (*Id.*). Based on her September 20, 2016 psychological exam, Dr. Durdin determined that Claimant's ability to understand, remember, and apply information is moderately limited, as is Claimant's ability to interact with co-workers and supervisors, but that Claimant's ability to handle familiar simple details of a repetitive nature is not impaired. (*Id.* at 112).

Critically, when rejecting Claimant's disability claim, the ALJ did *not* have opportunity to consider Dr. Campbell-Flint's May 30, 2018 Medical Source Statement (Mental) (the "MSSM"), which Claimant obtained one month *after* the ALJ's unfavorable decision. Claimant submitted the MSSM directly to the AC as part of Claimant's request for review of the ALJ's April 10 Decision. In contradiction of Dr. Durdin and Dr. Francis, Dr. Campbell-Flint's MSSM identifies *eleven* areas of mental functioning where Claimant exhibits "marked limitation," specifically:

- Understand, remember and carry out detailed instructions;
- Make judgments on simple work-related decisions;
- Interact appropriately with the public;
- Accept instructions and respond appropriately to criticism from supervisors;
- Get along with co-workers or peers without (unduly) distracting them or exhibiting behavioral extremes;
- Respond appropriately to changes in a routine work setting;
- The ability to maintain attention and concentration for extended periods

4

> (the approximate 2-hour segments between arrival and first break, lunch, second break, and departure);
>
> - The ability to sustain an ordinary routine without special supervision;
>
> - The ability to work in coordination with or proximity to others without being (unduly) distracted by them;
>
> - The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and
>
> - The ability to maintain socially appropriate behavior.

(Doc. 7-3 at 21-23). The MSSM also states Dr. Campbell-Flint's opinion that Claimant is *not* "capable of performing full-time (8 hours a day, five days a week) remunerative, competitive employment on a day-to-day, sustained basis; that is, without an unacceptable rate of absenteeism." (*Id.* at 23).

On January 9, 2019, the AC denied Claimant's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Doc. 7-3 at 2-4). The AC's January 9 notice specifically acknowledges receiving Dr. Campbell-Flint's MSSM—and various other medical records submitted after the ALJ's unfavorable April 10 Decision, including records of Claimant's treatment following a suicide attempt on April 13, 2018—but disregards this evidence stating that it "does not relate to the period at issue" because it post-dates the ALJ's written decision. (*Id.* at 3).

On March 6, 2019, Claimant timely filed this action to obtain judicial review of the Commissioner's unfavorable decision denying his claim for disability insurance benefits and supplemental security income.

5

## II.     APPLICABLE LEGAL STANDARDS

### A. Judicial Review

The Court reviews the Commissioner's denial of social security benefits only to ascertain whether the decision applied the proper legal standard and, if so, whether substantial evidence supports the decision. *Randall v. Astrue*, 570 F.3d 651, 655 (5th Cir. 2009). If the proper legal standards are applied and the fact findings are supported by substantial evidence, they must be affirmed. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). When reviewing an unfavorable decision, "[t]he court does not reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Id.* "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quotation marks and alterations omitted).

"Substantial evidence" is not a lot. As explained most recently by the U.S. Supreme Court,

> The phrase "substantial evidence" is a term of art used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, 139 S. Ct. 1148 (2019) (alterations and citations omitted).

### B. Standard for Entitlement to Social Security Benefits

To obtain Social Security benefits, the claimant must show he has a medically

6

determinable physical or mental impairment lasting at least twelve months that prevents him from engaging in substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1572(a) and (b). The ALJ uses a five-step sequential process to evaluate claims of disability and decides whether: (1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment in Appendix 1 of the Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520.

The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner for the fifth step. Thus, the claimant must show first that he is no longer capable of performing his past relevant work. 20 C.F.R. § 404.1520(e). If the claimant satisfies this burden, then the Commissioner must show that the claimant is capable of engaging in some type of alternative work that exists in the national economy. *Newton*, 209 F.3d at 453. Once the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding. *Id.*

### III. DISCUSSION

On appeal, Claimant argues that the Commissioner (1) failed to consider and properly weigh medical evidence from Claimant's treating physicians submitted directly to the AC after the ALJ's unfavorable April 10 Decision; (2) erred in her evaluation of Claimant's condition as it relates to Claimant's Residual Functional

7

Capacity; and (3) failed to consider all of Claimant's medical conditions. (Doc. 8 at 4). For reasons explained below, the Court determines that Claimant's first argument is dispositive of his appeal, and therefore does not address Claimant's remaining arguments.

### A. Consideration of Post-Decision Medical Records And Treating Physicians' Opinions

Claimant argues that the AC erred as a matter of law by disregarding medical records submitted after the ALJ rendered his April 10 Decision. Specifically, Claimant argues that the AC should not have disregarded Dr. Campbell-Flint's May 30 MSSM because the opinions stated therein regarding Claimant's mental abilities are consistent with four years of treatment for epilepsy, encephalopathy, depression, anxiety, personality disorder, and PTSD, and "the limitations expressed by Dr. Campbell-Flint refer to the claimant's ongoing condition." (Doc. 8 at 11).

This Court agrees, and determines that the Commissioner erred as a matter of law by disregarding Dr. Campbell-Flint's MSSM—*and* the additional medical records submitted after the ALJ's April 10 Decision—because such evidence is expressly part of the record on appeal under controlling precedent. In reaching this conclusion, the Court is guided by U.S. Court of Appeals for the Fifth Circuit's decision in *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005), which held that a treating physician's medical source statement submitted for the first time to the AC after an unfavorable ALJ decision "is part of the record on appeal." *Higginbotham*, 405 F.3d at 337.

The facts of *Higginbotham* are virtually indistinguishable from those at issue

here. In *Higginbotham*, the claimant sought SSI benefits alleging that bipolar disorder rendered him totally disabled. The ALJ denied the claim, determining that the claimant had no "exertional limitations," had only minimal "non-exertional limitations," and was capable of performing jobs requiring short, simple instructions and limited interaction with other people. The claimant requested review by the Appeals Council, and while his request was pending, submitted a medical source statement from his treating physician concluding that he was completely incapable of performing regular employment activity due to his mental limitations.

The AC expressly considered the claimant's post-decision medical source statement, but nonetheless denied review. The district court affirmed the ALJ's original unfavorable decision, but refused to consider the medical source statement, determining that it was not part of the administrative record on appeal. The Fifth Circuit reversed and remanded to the district court with specific instructions to consider the claimant's post-decision medical source statement, ruling that "evidence submitted for the first time to the Appeals Council is part of the record on appeal." *Higginbotham*, 405 F.3d at 337.

This Court faces a nearly identical situation as in *Higginbotham*. The difference is that the *Higginbotham* AC expressly *considered* the claimant's medical source statement, whereas here the AC *disregarded* the MSSM, stating that it "does not relate to the period at issue." This conclusory statement simply cannot be squared with *Higginbotham's* central premise that a medical source statement obtained from a treating physician and submitted directly to the AC *after* an unfavorable ALJ

9

decision is properly part of the record and must be considered when weighing Claimant's claim for disability benefits. As such, the AC should have considered the MSSM—as well as the additional evidence submitted for the first time to the AC— and erred as a matter of law by failing to do so. *See Higginbotham*, 405 F.3d at 337–38.

Next, the Court must determine how to correct this legal error. Had the AC actually considered Dr. Campbell-Flint's MSSM (and the other post-decision evidence), the Court could perform its standard duty to assess whether the ALJ's decision is nonetheless supported by "substantial evidence," and whether the Commissioner used the proper legal standards to evaluate the additional evidence from Claimant's treating physicians.[2] *Newton*, 209 F.3d at 452. But precisely because the AC explicitly *disregarded* the post-decision evidence, this Court is now in the position of weighing it for the first time to determine whether Claimant has carried his burden of proving a disability. That is not the Court's role. Instead, as always, "the ALJ has sole responsibility for determining a claimant's disability status" based on the evidence in the record. *Id*. at 455 (quotation marks omitted). Accordingly, the

---

[2] The Fifth Circuit instructs that "[t]he opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability," and, further, that "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Newton*, 209 F.3d at 455 (quotation marks omitted). As indicated above, the opinions reflected in Dr. Campbell-Flint's May 30 MSSM are supported by four years of treatment records, establish that Claimant is incapable of performing full-time employment, and directly contradict the findings of Dr. Durdin and Dr. Francis. Certainly this suggests that Dr. Campbell-Flint's opinions should be given controlling weight. *Id*.

proper remedy is to vacate the Commissioner's decision, and remand to the ALJ for a determination of Claimant's disability status in light of Dr. Campbell-Flint's May 30 MSSM (and the other post-decision evidence submitted to AC).[3]

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the Commissioner's unfavorable decision is **VACATED**, and the case is **REMANDED** for further consideration consistent with this opinion.

Baton Rouge, Louisiana, this 30th day of November, 2020

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[3] In her opposition brief, the Commissioner asserts that the Court may affirm the ALJ's unfavorable decision under "substantial evidence" review, notwithstanding the AC's failure to consider the post-decision evidence, and cites multiple cases to support this proposition. (Doc. 10 at 17-19). Each of the Commissioner's authorities, however, is distinguishable because they address situations where the AC expressly considered (and weighed) the new evidence at issue, but concluded that it did not provide a basis for changing the ALJ's decision. *See Charles v. Colvin*, 628 F. App'x 290, 292 (5th Cir. 2016); *Foster v. Astrue*, 410 F. App'x 831, 833 & n.3 (5th Cir. 2011); *Beck v. Barnhart*, 205 F. App'x 207, 214 (5th Cir. 2006) *Higginbotham v. Barnhart*, 163 F. App'x 279, 280 (5th Cir. 2006). Here, by contrast, the AC disregarded the additional evidence, determining that it "does not relate to the period at issue." (Doc. 7-3 at 3). As explained, this distinction makes all the difference. Here, the Commissioner would have the Court weigh the evidence for the first time to decide whether Claimant has proved his claim. However, as noted, determining a claimant's disability status is reserved exclusively for the ALJ. *Newton*, 209 F.3d at 455 (quotation marks omitted).